1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

TRACY DEANN ROBERTS,

**1:13-cv-01614-GSA**

12

Plaintiff,

13

v.

14

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT**

15

Defendant.

16

17

18

19

### I.    INTRODUCTION

20

Plaintiff Tracy Deann Roberts ("Plaintiff") seeks judicial review of a final decision by the

21

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22

supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social

23

Security Act. The matter is currently before the Court on the parties' briefs, which were submitted

24

without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

25

### II.    BACKGROUND AND PRIOR PROCEEDINGS[2]

26

Plaintiff is currently 45 years old. AR 33. She graduated high school in 1988. AR 137.

27

28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. ECF Nos. 7, 8.
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

After graduating from high school, Plaintiff worked as a nail technician providing manicures and pedicures until March 2009, when she was injured in a motor vehicle accident. AR 33, 34. She has not worked since then. *Id.* The accident left Plaintiff with injuries to her knees and neck for which she required corrective surgery. AR 34. Plaintiff asserts that her neck and back injuries, which include disc damage, acute muscle spasms, multiple levels of cervical laxity damage, and osteopenia, prevent her from working. AR 136.

Her alleged physical symptoms include knee stiffness, pain, headaches, shortness of breath, abdominal pain, nausea, and vomiting. AR 16. She also asserts psychiatric symptoms, including depressed/irritable mood, crying spells, auditory hallucinations, decreased sleep/appetite, and occasional suicidal ideation. AR 622-623. She currently takes a number of medications to manage her symptoms, including Ambien, Effexor, Xanax, Flexeril, Motrin, Spiriva, Symbicort, and Fentanyl. AR 819.

On December 13, 2010, Plaintiff filed her application for disability insurance benefits under Title II. AR 49. She also filed an application for Title XVI supplemental security income on December 31, 2010. AR 50. Both applications alleged that her period of disability began on March 25, 2009. Both applications were denied initially on April 27, 2011 and on reconsideration on December 15, 2011. AR 53-57, 60-64, 65-69. Plaintiff filed a request for a hearing on February 22, 2012. AR 70-72. The hearing was then conducted before Administrative Law Judge John Heyer (the "ALJ") on December 17, 2012. AR 30-48. On January 19, 2013, the ALJ issued an unfavorable decision that determined that Plaintiff was not disabled. AR 9-23. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner. AR 3-5.

III.   **THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

2

1
2
3
. . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4
5
42 U.S.C. § 1382c(a)(3)(B).

6
7
8
9
10
11
To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

12
13
14
15
16
17
18
19
Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f).

20
21
22
23
24
Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 9-29. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 25, 2009, the date specified in her application. AR 14. Further, the ALJ identified cervical and lumbar spine degenerative disc disease; status post anterior cervical discectomy and fusion surgery; right knee

25
26
27
28
---
[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).
[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

meniscal tear and chondromalacia; status post arthroscopy and chondroplasty; and restrictive airway disease as severe impairments. AR 14. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 15.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she must alternate between sitting and standing, as needed, in up to 30-minute increments and must be in a job with no exposure to fumes. AR 16. Although the Plaintiff cannot perform her past relevant work, she could perform other work that exists in national economy. AR 21.

IV.     **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

 "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

V.     **DISCUSSION**

**A.  The Relevant Medical Evidence**

Plaintiff argues that the ALJ improperly considered the medical evidence and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of the opinions of: (1) Greg Hirokawa, Ph.D., a psychologist who treated Plaintiff; (2) John K. Zhang, Psy.D., a consultative examining psychologist; and (3) Pamela Hawkins, Ph.D., a reviewing psychologist. The parties do not contest the ALJ's assessment of the physicians who treated or provided examinations with respect to Plaintiff's physical condition (as opposed to her psychiatric condition).

///

4

### i. Greg Hirokawa, Ph.D.

Dr. Hirokawa treated Plaintiff on an approximately monthly basis for seven months. AR 660-667, 819-824. In his initial visits with Plaintiff, Dr. Hirokawa concluded that Plaintiff displayed "moderate symptoms of depression" and prescribed six sessions of behavioral pain management. AR 666. Over the course of the next seven months, Dr. Hirokawa completed several short clinical progress notes. The notes relayed information that Plaintiff was telling him, including her reports of "episodes of problems with memory and concentration," a report that a sheriff had been called after she verbalized threats of suicide to a doctor's staff, and a report that Plaintiff was having difficulty dealing with people. AR 660, 661.

On December 13, 2012, Dr. Hirokawa completed a six page report on Plaintiff's condition and concluded that Plaintiff had:

- Moderate limitations in following simple instructions;

- Marked limitations in following complex/detailed instructions;

- Moderate limitations in maintaining adequate pace or persistence to perform simple repetitive tasks;

- Marked limitations in maintaining adequate pace or persistence to perform complex tasks;

- Marked limitations in maintaining adequate attention/concentration, adapting to changes in a job routine, and withstanding the stress of a routine workday;

- Marked limitations in interacting appropriately with co-workers, supervisors, and the public on a regular basis;

- Marked limitations in accepting instructions from supervisors;

- Moderate limitations in showing social judgment and awareness of socially appropriate behavior;

- Marked limitations in functioning independently and sustaining an ordinary routine without special supervision; and

- Marked likelihood that Plaintiff's condition would deteriorate in a work environment.

AR 824.

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Hirokawa's opinion. In particular, Plaintiff argues that: (1) Dr. Hirokawa is a "treating

physician" and is thus entitled to deference; (2) Dr. Hirokawa relied on more than just Plaintiff's subjective self-reports in arriving at his conclusions; and (3) even if Dr. Hirokawa did rely on Plaintiff's self-reports, his opinions can still be relied on because clinical psychologists are routinely required to make decisions about subjective complaints. Plaintiff's Opening Brief 16-17, ECF No. 15.

The Commissioner argues that the ALJ properly considered Plaintiff's mental impairment by considering the history of Plaintiff's treatment in conjunction with Dr. Hirokawa's report. Moreover, the ALJ provided specific and legitimate reasons for his rejection of Dr. Hirokawa's opinion. Specifically, the Commissioner argues that: (1) Dr. Hirokawa's opinion was inconsistent with those of Drs. Hawkins and Zhang; (2) Dr. Hirokawa's opinion was properly given little weight because it is internally inconsistent; (3) it is appropriate to disregard a medical opinion that is based primarily on self-reports where the claimant's credibility has been called into question.[5] Defendant's Opposition Brief 15:19-22, 16:1-19, 18:8-15, ECF No. 16. Finally, the Commissioner notes that Dr. Hirokawa's conservative treatment history suggests that Plaintiff should not be classified as "disabled." *Id.* at 17:20-18:7.

### ii. Pamela Hawkins, Ph.D.

Dr. Hawkins completed a Psychiatric Review Technique form on November 29, 2011. AR 632. She also completed a Mental Residual Functional Capacity Assessment of Plaintiff. AR 643. In that Assessment, she checked boxes in the first section—"Summary Conclusions"—indicating that the Plaintiff had:

- Moderate limitations in understanding and remembering detailed instructions[6];

- Moderate limitations in carrying out detailed instructions;

---

[5] The ALJ also found that the Plaintiff was "not fully credible," both because of her testimony at the hearing and based on the medical records available, including those of Dr. Hirokawa. AR 19. This finding is not challenged by Plaintiff.

[6] Dr. Hawkins appears to have inadvertently checked two boxes in the line regarding the Plaintiff's ability to understand and remember short and simple instructions and no boxes on the line regarding the Plaintiff's ability to understand and remember detailed instructions. In the final Functional Capacity Assessment of the form, Dr. Hawkins writes that the Plaintiff is "capable of understanding and remembering simple one and two step instructions," so it appears that Dr. Hawkins intended to check the box indicating that Plaintiff would have moderate limitations in understanding detailed instructions, not simple instructions. AR 645. Plaintiff appears to agree with this interpretation of Dr. Hawkins's opinion. Plaintiff's Opening Brief 7:19-21 ("Dr. Hawkins found that Ms. Roberts was moderately limited in the following work-related abilities: carry out detailed instructions. . . ").

- Moderate limitations in maintaining attention and concentration for extended periods;

- Moderate limitations in completing a normal workday and workweek without interruptions from psychologically based symptoms;

- Moderate limitations in interacting appropriately with the general public;

- Moderate limitations in getting along with coworkers or peers;

- Moderate limitations in maintain socially appropriate behavior;

- Moderate limitations in responding appropriately to changes in work setting.

AR 643-644. Dr. Hawkins concluded the Assessment in section three of the form—the "Functional Capacity Assessment"—by stating that Plaintiff is "best suited to work with minimal social interactions and limited public contact." While her "symptoms may interfere with effective responses to ordinary workplace stressors," they would not interfere "to the point of precluding all work." AR 645. She also found that Plaintiff was "capable of understanding and remembering simple one and two step instructions." *Id.*

Plaintiff claims that the ALJ disregarded Dr. Hawkins's opinion without providing specific and legitimate reasons supported by substantial evidence. Specifically, Plaintiff argues that: (1) the ALJ rejected Dr. Hawkins's findings that Plaintiff suffered moderate limitations in the "Summary Conclusions" section of the Mental Residual Functional Capacity Assessment form without providing any justification; and (2) the ALJ inappropriately rejected Dr. Hawkins's findings that Plaintiff would have moderate limitations in social functioning because the record suggests that Plaintiff displayed "severe emotional dysfunction." Plaintiff's Opening Brief 12:15-25, 13:9-24.

The Commissioner counters that: (1) the ALJ did not reject Dr. Hawkins's opinion, but rather incorporated it into his ultimate RFC assessment; (2) the only disagreement between the ALJ's RFC determination and Dr. Hawkins's opinion is found in the "Summary Conclusions" section of the Mental Residual Functional Capacity Assessment form, which is not typically considered the controlling portion of that Assessment form; and (3) the evidence that Plaintiff displayed "severe emotional dysfunction" disqualifying her from work all arises out of the subjective self-reports of Plaintiff, who has been deemed not credible. Defendant's Opposition

Brief 11:2-16, 12:1-11.

### iii.   John K. Zhang, Psy.D.

Dr. Zhang conducted a consultative examination of Plaintiff on October 20, 2011. AR 621. He concluded that Plaintiff demonstrated:

- Moderate limitations in maintaining concentration, attention, and persistence in a normal workday;

- Moderate limitations in understanding, remembering, and carrying out complex instructions;

- No limitations in understanding, remembering, and carrying out simple instructions;

- Moderate limitations in interacting appropriately with the public, supervisors and coworkers;

- Moderate limitations in adapting to stresses common to the work environment;

- Moderate limitations in performing activities within a schedule and maintaining regular attendance.

AR 623.

Plaintiff appears to assert a similar argument against the ALJ's treatment of Dr. Zhang's opinion as she does against the ALJ's treatment of Dr. Hawkins's opinion—namely, that the ALJ rejected Dr. Zhang's findings that Plaintiff suffered moderate limitations without providing any legitimate reasons. Plaintiff's Opening Brief 14:3-13.

The Commissioner responds that: (1) the ALJ did not reject Dr. Zhang's opinion, which is fully consistent with the ALJ's finding that Plaintiff has the ability to perform simple, repetitive tasks; and (2) the ALJ was justified in rejecting portions of Dr. Zhang's opinion because: (a) there were relatively few medical records; and (b) Plaintiff demonstrated the ability to work at the determined RFC through her daily activities and interactions with others. Defendant's Opposition Brief 13:13-27, 14:1-6.

### B.  Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining

physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). However, a "treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion").

When the treating doctor's opinion is not contradicted by another doctor, it can be rejected for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record for the rejection. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). It can, however, *support* the rejection of the opinion of a treating or examining physician. *See, e.g., Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, "the ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ."  *Magallanes*, 881 F.2d at 752. Rather, there was other evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52. Thus, the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."

1  *Sample v. Schweiker*, 694 F.2d at 639, 642 (9ᵗʰ Cir. 1982) *quoting Waters v. Gardner*, 452 F.2d
2  855, 858 n. 7 (9th Cir.1971).

3  **C. Analysis**

4  The ALJ evaluated Plaintiff's impairments and found that Plaintiff had the residual
5  functional capacity to perform sedentary work, provided that she alternated between sitting and
6  standing as needed in up to 30-minute increments. AR 16. The ALJ summarized Plaintiff's
7  medical history and noted that the most recent MRI scans of her cervical spine revealed only
8  "mild to moderate abnormalities." AR 17. He also determined that although the "medically
9  determinable impairments could reasonably be expected to cause the alleged symptoms,"
10  Plaintiff's testimony regarding the "intensity, persistence and limiting effects of these symptoms
11  [is] not entirely credible." *Id.*

12  In particular, he pointed to a number of internal inconsistencies in statements made by
13  Plaintiff in the record and at the hearing. For instance, Plaintiff submitted a function report
14  indicating that she could not, among other things, perform chores around the house, leave the
15  house for more than 30 minutes, or prepare meals for herself. AR 194, 195. At the hearing,
16  however, she testified that she was capable of performing light household chores, preparing
17  simple meals, and sometimes went to restaurants and movies. AR 36-38. The ALJ also noted that
18  references to the Plaintiff's alleged mental impairments were relatively sparse in the record and
19  the Plaintiff appeared to have interacted appropriately with doctors treating both her mental and
20  physical symptoms. Finally, the ALJ reviewed Dr. Hirokawa's notes, who noted that the Plaintiff
21  had "an extreme level of somatic complaints" and that her "depression, anxiety, [and]
22  catastrophizing are likely to magnify her pain symptoms." AR 666.  Other records support this
23  assessment. AR 773. Plaintiff does not challenge the ALJ's assessment of her credibility.

24  ***i.  Greg Hirokawa, Ph.D.***

25  Dr. Hirokawa's ultimate findings of marked limitations for the Plaintiff are contradicted
26  by the findings of Drs. Hawkins and Zhang.[7] Consequently, the ALJ need only provide specific

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[7] In particular, both Drs. Hawkins and Zhang found that Plaintiff was capable of understanding and completing
simple tasks. AR 623, 643-644.

1   and legitimate reasons supported by substantial evidence to reject Dr. Hirokawa's findings.

2   *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

3       The ALJ gave little weight to Dr. Hirokawa's finding that the Plaintiff had marked

4   limitations, explaining that:

5       Treater Dr. Hirokawa opined the claimant was fragile, easily overwhelmed, and
6       cognitively compromised, and he assessed primarily marked impairments in
        various work-related abilities (Ex. 30F). While Dr. Hirokawa is a treating source,
7       his opinion is afforded little weight because his own treating records reflect few
        appointments with the claimant, his assessment appears primarily based on the
8       claimant's subjective reporting, and it is inconsistent with his own records, which
        largely note intact cognition (Ex. 22F).

9   AR 21.

10      It appears that the ALJ thus gave Dr. Hirokawa's opinion little weight because: (1) he had

11  few meetings with Plaintiff; (2) the opinion was based on subjective self-reports by the Plaintiff;

12  and (3) the opinion is inconsistent with Dr. Hirokawa's own records. While (1) is a specific and

13  legitimate reason for giving a treating source's opinion less weight, it does not appear to be

14  supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir.

15  2007) (discounting reports from sources who did not have the "type of ongoing treatment

16  relationship contemplated by the plain text of the regulation"). Plaintiff appears to have been

17  referred to Dr. Hirokawa for pain management. AR 666, 819. She saw Dr. Hirokawa eight times

18  over the course of seven months. AR 819. This is the kind of ongoing relationship anticipated by

19  the regulations. [8] 20 C.F.R. §§ 404.1527(c)(2)(i), (ii), 416.927(c)(2)(i), (ii).

20      Reasons (2) and (3) are both specific and legitimate reasons to reject an opinion by a

21  treating source. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ

22  "reasonably rejected" physician's opinion where it was "based almost entirely on the claimant's

23  self-reporting"); *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding rejection of

24  treating physician's opinion where "ultimate conclusions . . . did not mesh with her objective data

25  or history"). Both reasons also appear to be supported by substantial evidence. At least four of the

26  five notes comprising Dr. Hirokawa's records reference self-reports by Plaintiff and two of those

27  _____

28  [8] The mere fact that Dr. Hirokawa was a "treating physician," however, does not necessarily give his opinion
    controlling weight. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

11

four appear to be based solely on those self-reports. Given the ALJ's unchallenged finding that Plaintiff lacked credibility, it was reasonable for the ALJ to reject a medical opinion based primarily on her statements. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").

Similarly, substantial evidence indicates that Dr. Hirokawa's internal treatment notes are inconsistent with his ultimate conclusions. **First**, the final report indicating that Plaintiff had marked limitations is unclear. Although Dr. Hirokawa concludes that Plaintiff has more serious limitations than those described by Dr. Zhang, he states that Dr. Zhang's opinion constitutes "an *underestimation* of her ability based upon his one-time evaluation." AR 823 (emphasis added). Read literally, this seems to indicate that Dr. Zhang found Plaintiff *more* limited than Dr. Hirokawa believes is appropriate, which does not comport with Dr. Hirokawa's final assessment. **Second**, as Defendant points out, Dr. Hirokawa's conservative course of recommended treatment is not consistent with the severe limitations he describes. Although he describes Plaintiff as fragile, "easily overwhelmed," and "cognitively compromised," his records consistently indicate no treatment beyond continued monthly sessions of psychotherapy. AR 660-662. Such a course of treatment is not supportive of his final conclusions, nor does it suggest a finding that Plaintiff was "totally disabled under the Act." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ thus had substantial evidence supporting his reasons for giving Dr. Hirokawa's opinion little weight.

### ii.   *Pamela Hawkins, Ph.D.*

The ALJ reviewed both the Psychiatric Review Technique and the Mental Residual Functional Capacity Assessment completed by Dr. Hawkins.[9] AR 20. The ALJ gave some weight to Dr. Hawkins's opinion to the extent that she found that Plaintiff was limited to performing simple, repetitive tasks, but appears to have rejected Dr. Hawkins's conclusion that Plaintiff had "moderate difficulties in maintaining social functioning" on the basis that: (1) there were "few

---

[9] In particular, the ALJ summarizes Section III ("Rating of Functional Limitations") of the Psychiatric Review Technique form and Section III ("Functional Capacity Assessment") of the Residual Functional Capacity Assessment. AR 640, 645.

mental health treating records"; (2) Plaintiff was cooperative at medical appointments and had the "ability to maintain personal relationships"; and (3) Plaintiff had "relatively intact daily activities." AR 20. All three of these constitute specific and legitimate reasons to reject Dr. Hawkins's opinion. *Turner*, 613 F.3d at 1224-25; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings").

Moreover, the ALJ's reasons are supported by substantial evidence in the record. Plaintiff maintained a positive relationship with James Porter, her boyfriend, and demonstrated the ability to interact with doctors and other medical staff. AR 183-190, 418, 722, 798. Plaintiff argues that she demonstrated "severe emotional dysfunction" and had very limited daily activities, but Defendant correctly points out that the vast majority of evidence in the record supporting her argument is based on statements that Plaintiff herself made at the administrative hearing or to doctors. At the point that the ALJ determined that Plaintiff was not credible, it was well within his judgment to dismiss evidence arising out of her statements.

Plaintiff also asserts that the ALJ rejected Dr. Hawkins's findings of moderate limitations in: the ability to complete a normal workday and workweek; interact appropriately with the public, coworkers, and peers; maintain appropriate socially appropriate behavior; and respond appropriately to changes in the work setting. Plaintiff's Opening Brief 12:12-25. As pointed out by the Defendant, however, these findings were articulated in Section I ("Summary Conclusions") of Dr. Hawkins's Mental Residual Functional Capacity Assessment, which "does not constitute the RFC assessment." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636-37 (3d Cir. 2010) ("this section of the examination form does not constitute the RFC assessment but rather is merely a worksheet to aid employees. Therefore, [the ALJ] was not required to assign *any* weight to this part of the report because it was not the final RFC finding"). Even if these findings had constituted a part of the final opinion, it is unclear that they would have precluded the ALJ's ultimate determination that Plaintiff is not disabled. *Id.* (moderate limitations do "not require that the individual's capacity be at a level that is unacceptable in the national workforce").

///

13

### iii.  John K. Zhang, Psy.D.

The ALJ also gave some weight to the report authored by Dr. Zhang, a consultative examiner. The ALJ grouped Dr. Zhang's opinion together with Dr. Hawkins's when determining how much weight to accord. Both doctors came to substantially similar conclusions: they determined that Plaintiff could perform simple, repetitive tasks in a working environment. AR 623, 645. Plaintiff treats the two doctors similarly, as well, challenging the ALJ's treatment of Dr. Zhang on the grounds that the ALJ did not provide any reasons to reject Dr. Zhang's opinion.

But the same analysis supporting the ALJ's treatment of Dr. Hawkins's opinion applies to Dr. Zhang's. Dr. Zhang's opinion was accorded some weight to the extent that he concluded that Plaintiff could perform simple, repetitive tasks. To the extent he found deficits in Plaintiff's social functioning, his opinion was rejected on the grounds that the record did not support that conclusion. There was also ample evidence in the record that Plaintiff was able to interact with others in a socially appropriate manner. Evidence to the contrary was found not credible because it was based primarily on Plaintiff's own statements. Thus, the ALJ had substantial evidence to support his treatment of Dr. Zhang's opinion.

## VI.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, and Commissioner of Social Security and against Plaintiff, Tracy Deann Roberts.

IT IS SO ORDERED.

Dated:  __February 27, 2015__          _____ /s/ Gary S. Austin
                                       UNITED STATES MAGISTRATE JUDGE